Peter S. Farrell, Esquire
Amber R. Cohen, Esquire
Peter G. Thomas, Esquire
COHEN CLEARY, P.C.
122 Dean Street
Taunton, MA 02780
Phone: (508) 880-6677
Facsimile: (508) 880-6679
pfarrell@cohencleary.com
acohen@cohencleary.com
pthomas@cohencleary.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DEBRA HASLAM, Individually and as Personal Representative of THE ESTATE OF CHRISTOPHER SHEPPARD,** | |
| **Plaintiff,** | |
| **v.** | |
| **WILLIAM D. MCLAUGHLIN, DAVID F. SHEA, JR., PAUL C. DIMINICO, DAVID B. MARR, JR., ANGELO COLASANTE, JAMES REGER, MICHAEL BOWES, SHANE O'NEILL, MICHAEL M. FOLEY and CHRISTOPHER T. FOGARTY, in their representative capacities as Trustees and GREGORY A. GEIMAN, in his capacity as Administrator of the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4 ("IUOE") HEALTH & WELFARE, ANNUITY & SAVINGS AND PENSION FUNDS; SYMETRA LIFE INSURANCE COMPANY; and WENDY T. SHEPPARD,** | Civil Action No.: <br><br> *DOCUMENT FILED ELECTRONICALLY* |
| **Defendants.** | |

## COMPLAINT

## <u>INTRODUCTION</u>

The essence of this case focuses on the careless disbursement of retirement benefits resulting in an ERISA violation centering upon the bogus, yet surprisingly successful, claim of an ex-spouse to receive the proceeds of her deceased ex-husband's life insurance, annuity, and pension from his union.

Debra Haslam ("Ms. Haslam") in her capacity as Personal Representative of the Estate of Christopher Sheppard, seeks relief from the Court regarding the erroneous and unlawful payment of her late brother's benefits from the International Union of Operating Engineers Local 4 ("Local 4") Health & Welfare, Annuity and Savings and Pension Fund (the "Fund") to Mr. Sheppard's former wife, Wendy T. Sheppard ("Ms. Sheppard"). Among other proceeds, the Fund erroneously paid over the pension portion of the Fund to Ms. Sheppard. The relevant account statement at the time of Mr. Sheppard's death reflects a vested balance in the Annuity and Savings Plan of $42,617.27. Additionally, Ms. Sheppard also received a "Pre-Retirement Survivor Benefit" or "Death Benefit Lump Sum" from the Local 4  pension fund in the amount of $50,000 to which she was not entitled.[1] Finally, Ms. Sheppard received a total of $70,000 from the Symetra Basic Life and Basic Accidental Death policy which she was not entitled.

Mr. Sheppard divorced Ms. Sheppard on June 1, 2015.[2]  On July 20, 2020, Ms. Sheppard stipulated to a judgment being entered against her on Mr. Sheppard's Complaint for Contempt in the Plymouth County Probate and Family Court.  On July 20, 2020, Ms. Sheppard entered into a

---

[1] It is unclear if this amount was insured or drawn from the Fund.

[2] The matter is entitled <u>Wendy T. Sheppard v. Christopher L. Sheppard</u>, Plymouth Probate & Family Court, Docket No.: PL14D0815DR.

"Stipulation for Judgment."   The stipulation states it was "ordered and adjudged in contemplation of an open complaint for contempt and complaint for modification that Ms. Sheppard was in contempt of the judgment by way of receiving an overpayment of alimony."

In need of purging herself of the contempt, Ms. Sheppard agreed that the Divorce Judgment dated June 1, 2015 "Addendum D" of the Separation Agreement was vacated in its entirety and agreed that each party were therefore entitled to retain their own retirement, pension, investment and like accounts.  In furtherance of this resolution to the contempt, the language of "Addendum D" was be replaced with a new "Addendum D" which contained *inter alia*, the following and legally operative language: "The Husband and Wife will each retain his or her sole and exclusive property all their right, title and interest in any pension, retirement plans and savings."  The parties agreed to terminate alimony, *inter alia*, as part of the Stipulation for Judgment.  At the time Ms. Sheppard executed the Stipulation for Judgment, any right, title, and interest she may have had in any of Mr. Sheppard's retirement benefits, including life insurance, annuities or pension benefits was extinguished, including Mr. Sheppard's obligation to continue to list Ms. Sheppard as court-ordered beneficiary of any life insurance policy.

At the time of his death, Symetra Life Insurance ("Symetra") insured Mr. Sheppard's life.  Local 4 included the Symetra policy that it offered, sold and which Mr. Sheppard accepted as a benefit of the Fund.  When Symetra paid the benefits to Ms. Sheppard, it knew or should have known that Ms. Sheppard was not a qualified beneficiary entitled to the proceeds because the Fund had received information and was in possession of documents showing competing claims.

## **THE PARTIES**

1.    Debra Haslam is an individual residing at 141 Bedford Street, West Bridgewater, MA
      02379.  Ms. Haslam is the sister of the late Christopher Sheppard and has been appointed

as the Personal Representative of the Estate of Christopher Sheppard (the "Estate.")  Ms. Haslam is also the sole surviving heir and beneficiary of Mr. Sheppard's retirement benefits, to wit, life insurance proceeds, annuity and pension benefits that were previously held by the Fund.  In her individual capacity, Ms. Haslam is a third-party beneficiary of the life insurance policy and annuity and pension benefits that are at issue in this litigation.

2.   Wendy T. Sheppard is an individual residing at 91 Lexington Street, New Bedford, MA 02740.  She is the former spouse of the late Christopher Sheppard.

3.   William D. Mclaughlin, David F. Shea, Jr., Paul C. Diminico, David B. Marr, Jr., Angelo Colasante, James Reger, Michael Bowes, Shane O'Neill, Michael M. Foley, and Christopher T. Fogarty are individuals who comprise the Board of Trustees of the International Union Of Operating Engineers Local 4 ("IUOE" or "Local 4") Health & Welfare, Annuity & Savings and Pension Fund (the "Fund").  The Fund maintains a principal place of business at 16 Trotter Drive, Medway, Massachusetts 02053.

4.   Gregory A. Geiman, is an individual and attorney, licensed to practice law in the Commonwealth of Massachusetts.  Upon information and believe, Attorney Geiman is a full-time employee of Local 4 and/or the Fund.   At all times relevant, Attorney Geiman was the administrator of Fund providing the benefits, including life insurance, annuity and pension proceeds that are at issue in this litigation.

5.   Acts or conduct undertaken, or omissions made by the Trustees were due to their role to oversee the Fund and the acts, conduct or omissions by the Trustees are on behalf of the Fund.

6.   In his role as administrator of the Fund, Mr. Geiman's acts, conduct or omissions were made by and on behalf of the Fund.

4

7.    Acts, conduct or omissions of the Fund are those taken by the Trustee Defendants, Mr. Geiman, or employees of the Fund over whom the Trustees and Mr. Geiman had supervisory and managerial authority and oversight.

8.    Symetra Life Insurance Company ("Symetra") is a subsidiary or subdivision operating under Symetra Securities, Inc., a foreign corporation incorporated in the State of Washington with a principal place of business located at 777 108th Avenue, N.E., Ste. 1200, Bellevue, WA 98004.  Symetra does business in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

9.    The Plaintiff, Debra Haslam, brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) and § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

10.   Venue lies in the District of Massachusetts pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ERISA-governed plan at issue was sold and administered in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because some of the events or omissions giving rise to the Plaintiff's claims occurred within this District, and Ms. Haslam resides in this District.

## STATEMENT OF FACTS
## MR. SHEPPARD'S MEMBERSHIP IN LOCAL 4 AND THE FUND

11.   Throughout his life, Christopher Sheppard was a loyal and hard-working union laborer.

12.   During the period January 1985 through October 2016, Mr. Sheppard was a member of the New England Teamsters, Local 25 where he earned 24 years and 10 months of pension credit.

13. In or about November 2016, Mr. Sheppard started a new union job with CJ Shaunessy Crane, joining the International Union of Operating Engineers, Local 4.

14. In or about October 2021, Mr. Sheppard started a new union job with Collins Crane & Rigging ("Collins") where he worked until his tragic death on November 9, 2021, when he was killed in a crash on the highway during work hours.

15. On May 29, 2014, Ms. Sheppard filed for divorce in the Plymouth County Probate & Family Court, Docket No.: PL140815DR.

16. Mr. Sheppard and Ms. Sheppard divorced on June 1, 2015.

17. Accordingly, at the time Mr. Sheppard started work at CJ Shaunessy Crane and joined Local 4, Mr. Sheppard was not married.

18. As a union laborer, Mr. Sheppard was a member of the International Union of Operating Engineers, Local 4 whose union hall is located in Medway, Massachusetts.

19. As a member of Local 4, Mr. Sheppard derived certain retirement benefits from the Local 4's so-called "Health & Welfare, Annuity and Savings and Pension Fund (the "Fund").

20. The Fund is comprised of several different benefits offered to Local 4 members including the administration of Mr. Sheppard's life insurance through Symetra Life Insurance Company in addition to Mr. Sheppard's pension (including a "Pre-Retirement Survivor Benefit" or "Lump Sum Death Benefit)", annuity and other health benefits.

21. At all times relevant, the Fund included these benefits meant to support Mr. Sheppard in his retirement.

22. As such, the Fund is a qualified plan pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq.

## THE TRUSTEES AND ADMINISTRATION OF THE FUND

23. At all times relevant, the Defendant Trustees adopted the pension plan, annuity and life insurance benefits and caused action to be taken as to the Fund including Mr. Sheppard's pension and life insurance benefits.

24. At all times relevant, the Defendant Trustees also exercised control over employees of the Fund whose job it was to administer the day-to-day functions of the fund, including processing of claims, beneficiary forms, correspondence and making disbursements from the Fund for the benefit of the Fund's contributors and their intended beneficiaries.

25. At all times relevant, Gregory A. Geiman, was the administrator of the Fund who was charged with the day-to-day operations of the Fund itself.   At all times relevant, Mr. Geiman reported to the Board.

26. The Fund is required to communicate and specify the precise basis upon which payments are made or not made from the Fund.

27. At all times relevant, Mr. Sheppard made contributions from his paycheck to the Fund which the Fund accepted and held in trust for Mr. Sheppard's benefit when he retired.

28. As the Fund held funds in trust, the Fund owed Mr. Sheppard a fiduciary duty.

## BENEFICIARY DESIGNATIONS AND COURT ORDER TERMINATING MS. SHEPPARD AS BENEFICIARY

29. On February 20, 2017, Mr. Sheppard executed a form entitled "Request for Designation of Beneficiary" and designated his sister, Debra Haslam, as the beneficiary of his life insurance policy with AIG Life Insurance Company, Policy No.: G251617.  A true and accurate copy of this form is attached hereto as Exhibit 1.

30. On August 31, 2017, Mr. Sheppard completed the Local 4 "Member Demographic Sheet." A true and accurate copy of the Demographic Sheet is attached hereto as Exhibit 2.

31. The Member Demographic Sheet was drafted and prepared by the Fund, its Administrator, and the Trustees of same or either or all of their designee(s).

32. At all times relevant, the Fund knew Mr. Sheppard was divorced.

33. At all times relevant, the Fund knew Mr. Sheppard was ordered by a court to list Ms. Sheppard as beneficiary of his life insurance policy administered by the Fund.

34. The Member Demographic Sheet states Mr. Sheppard's marital status as "divorced" and lists Ms. Sheppard as "Dependent 1" next to which appears a box checked "Court Ordered."

35. The Fund's Demographic Sheet states Mr. Sheppard was "court ordered" to list Ms. Sheppard as "Dependent 1" of his Primary Life Insurance Policy.

36. On page 2 of the Demographic Sheet, in the section entitled, "Primary Life Insurance Beneficiary," Mr. Sheppard designated his ex-wife, Wendy T. Sheppard, as the 100% beneficiary of his Primary Life Insurance Policy with  Symetra Life Insurance Company.

37. At the time he designated his ex-wife as the beneficiary of his Primary Life Insurance Policy on August 21, 2017, Mr. Sheppard was required by a court order in his divorce to do so.  A true and accurate copy of the Judgment Nisi and Separation Agreement are attached hereto collectively as Exhibit 3.

38. Mr. Sheppard would not have listed Ms. Sheppard as the beneficiary of his Primary Life Insurance Policy on the Demographic Sheet if the Court did not order him to do so.

39. Mr. Sheppard did not designate Ms. Sheppard as the beneficiary of any other portion of his pension benefits held in trust or any other benefit administered by and through the Fund, including the right to receive a so-called Pre-Retirement Survivor Benefit or "Lump Sum Survivor Benefit."

40.   On July 20, 2020, Ms. Sheppard entered into a "Stipulation for Judgment" it was "ordered and adjudged in contemplation of an open complaint for contempt and complaint for modification that Ms. Sheppard was in contempt of the judgment by way of receiving an overpayment of alimony.   A true and accurate copy of the Stipulation for Judgment is attached hereto as Exhibit 4.

41.   In purging herself of the contempt, the Divorce Judgment dated June 1, 2015 "Addendum D" of the Separation Agreement was vacated in its entirety and the parties agreed that each would retain their own retirement, pension, investment and like accounts and the language of said "Addendum D" would be replaced with a new "Addendum D" containing the following and legally operative language: "The Husband and Wife will each retain his or her sole and exclusive property all their right, title and interest in any pension, retirement plans and savings."  See Exhibit 4 at ¶2.

42.   Paragraph 3 of the same Stipulation for Judgment states, "Specifically, the Plaintiff shall retain sole right, title and interest in his Teamster Defined Benefit Pension Plan and Local 25 New England Teamsters Savings and Investment Plan and another [sic] retirements he may have acquired."  See Exhibit 4 at ¶3.

43.   Ms. Sheppard was to retain "sole, right, title and interest in the Southcoast Health IRA and the Transamerica IRA and any other retirement assets she may have acquired."  See Exhibit 4 at ¶4.

44.   The parties further agreed that they each were relieved and no longer required to file a QDRO in the divorce matter as the issue was moot.  See Exhibit 4 at ¶ 5.

45.   The parties agreed to terminate alimony as part of the Stipulation for Judgment.  See Exhibit 4 at ¶6.

46. Page 2 of the Member Demographic Sheet expressly states the following:

The persons named below as your life insurance beneficiary(ies) will receive the proceeds from the Health and Welfare Fund Life Insurance Policy in the event of your death if eligible for coverage. The Secondary Life Insurance Beneficiaries will only be entitled to the proceeds from the Health and Welfare Life Insurance Policy if all of the Primary Life Insurance Beneficiaries predecease you. If only one of your two Primary Life Insurance Beneficiaries predeceases you, then the other Primary Life Insurance Beneficiary will receive 100% of the proceeds. If you name a minor, proof of guardianship may be required.

47. Page 2 of the Member Demographic Sheet also expressly states the following:

The person(s) named below as your life insurance beneficiary(ies) may also become entitled, in the percentages shown below, to certain death benefits payable under the Pension Fund and/or the Annuity and Savings Fund, if at the time of your death you do not have a spouse, an ex-spouse who is entitled to such benefits under a Qualified Domestic Relations Order (QDRO), or a valid beneficiary designation on file with the respective Fund.  Please note, however, that if a person named below as your life insurance beneficiary was once your spouse, and your marriage to that spouse ended in divorce, the Annuity and Savings Fund and the Pension Fund will presume your designation of that spouse as beneficiary was terminated as of the final date of divorce. If you want a former spouse listed below to remain eligible for benefits from the Annuity and Savings and Pension Funds, you must notify the Trustees of both the Annuity and Savings Fund and the Pension Fund in writing that you wish to continue this ex-spouse as a beneficiary.

48. At the time the Member Demographic Sheet was completed, with the exception of his Primary Life Insurance Policy, Ms. Haslam was the designated beneficiary of the proceeds of all Mr. Sheppard's other accounts with the Fund.

49. On or about December 9, 2021, Amy Moreno, an employee of the Fund, told Ms. Haslam "your name is on everything" when Ms. Haslam inquired about Mr. Sheppard's benefits with the Fund.

50. Ms. Moreno told Ms. Haslam that her name was on file and that she did not have to add Mr. Sheppard's Pension and Annuity as assets of his estate.

51. On November 19, 2021, the Fund wrote to Ms. Haslam and enclosed "forms" and issued a "request for papers necessary to complete your claim."   A true and accurate copy of this letter is attached hereto as Exhibit 5.

52. In its correspondence of November 19, 2021, the Fund requested a "Statement of Sole Surviving Heir" from Ms. Haslam which needed to be signed and notarized.

53. In its correspondence to Ms. Haslam of November 19, 2021, the Fund requested a "Symetra Beneficiary Statement" and a copy of Mr. Sheppard's death certificate.

54. The Fund requested that the completed forms be returned "to [the Local 4] Union Office in the envelope provided."

55. Shortly thereafter, Ms. Haslam completed the notarized Statement of Sole Surviving Heir and the Symetra Beneficiary Statement and returned the completed forms to the Fund office as directed.

56. The Fund received the completed Statement of Sole Surviving Heir and the Symetra Beneficiary Statement.

57. When the Fund received the completed Statement of Sole Surviving Heir and the Symetra Beneficiary Statement, the Fund knew or should have known that Ms. Haslam had filed a claim for Mr. Sheppard's benefits with the Fund.

58. Even prior to the receipt of the Statement of Sole Surviving Heir and Symetra Beneficiary Statement, the Fund knew or should have known that Ms. Sheppard was not a qualified beneficiary.

59. Prior to its receipt of the Statement of Sole Surviving Heir and Symetra Beneficiary Statement and at all times relevant thereafter, the Fund and its agents acted as fiduciaries with respect to the Fund, its contributing members and the beneficiaries of the assets held in trust.

60. On January 22, 2022, when Ms. Sheppard filed her claim for Mr. Sheppard's benefits, Ms. Sheppard was acutely aware that she had no right, title, or interest in any of Mr. Sheppard's life insurance, annuity or pension funds held with the Fund.

61. On January 22, 2022, the Fund was obligated to hold Mr. Sheppard's life insurance, annuity, and pension fund proceeds for the benefit of Mr. Sheppard's intended beneficiaries or his Estate.

62. Instead of questioning competing claims for disbursement of Mr. Sheppard's life insurance, annuity or pension proceeds and reconciling those claims, the Fund paid said proceeds in question to Ms. Sheppard.

63. The Fund failed to act, to seek instructions or attempt to reconcile the competing claims for Mr. Sheppard's benefits.

64. At the time of his death, Mr. Sheppard had designated his sister, Ms. Haslam, as the beneficiary of his annuity and pension account held by the Fund.

65. Ms. Haslam has not received the proceeds of Mr. Sheppard's annuity and pension account.

66. Ms. Haslam has not received the proceeds of Mr. Sheppard's annuity and pension account because the Fund paid those proceeds to Ms. Sheppard.

67. The Member Demographic Sheet expressly and unequivocally states that if Mr. Sheppard wanted his former spouse, Ms. Sheppard "listed below to remain eligible for benefits from the Annuity and Savings and Pension Funds, [he] must notify the Trustees of both the Annuity and Savings Fund and the Pension Fund in writing that [he wished] to continue this ex-spouse as a beneficiary."

68. At the time of his death, Mr. Sheppard had not notified the Trustees of both the Annuity and Savings Fund and the Pension Fund in writing that he wished to continue Ms. Sheppard as a beneficiary of his annuity or pension accounts held and administered by the Fund.

69. At the time of Mr. Sheppard's death, the Fund had not received any written notice from Mr. Sheppard indicating he wished to continue Ms. Sheppard as a beneficiary of his annuity and pension accounts by the Fund.

70. At no time did Mr. Sheppard designate his former spouse, Ms. Sheppard as a beneficiary of his annuity or pension accounts held and administered by the Fund.

71. To the contrary, shortly after Mr. Sheppard's death, the Fund recognized Ms. Haslam as a beneficiary of Mr. Sheppard's accounts held and administered by the Fund.

72. Shortly after Mr. Sheppard's death, the Fund recognized Ms. Haslam as a beneficiary of Mr. Sheppard's accounts held in trust and administered by the Fund.

73. The Fund statement of account for the period October 1, 2021, through December 31, 2021 (4th quarter) states on page two that with respect to beneficiary(ies), Mr. Sheppard had "No beneficiary(ies) on file."  A true and accurate copy of this Account Statement is attached hereto as Exhibit 6.

74. At the time of the 4th quarter statement, Ms. Sheppard was not a beneficiary of Mr. Sheppard's pension fund.

75. The timing of the 4th quarter statement subsumed the date, November 19, 2021, that the Fund wrote to Ms. Haslam and acknowledged her as the beneficiary when it sent the Statement of Sole Surviving Heir that required notarization.

76. The timing of the 4th quarter statement subsumed the date, November 19, 2021, that the Fund wrote to Ms. Haslam and acknowledged her as the beneficiary when it sent the Symetra Beneficiary Statement.

77. The timing of the 4th quarter statement subsumed the date, November 19, 2021, that the Fund wrote to Ms. Haslam and acknowledged her as the beneficiary when it requested a copy of Mr. Sheppard's death certificate.

78. The Fund received a completed and notarized Statement of Sole Surviving Heir from Ms. Haslam.

79. The Fund received a completed Beneficiary Statement for Mr. Sheppard's life insurance policy with Symetra from Ms. Haslam.

80. At the time the Fund wrote to Ms. Haslam on November 19, 2021, the Fund had notice that Mr. Sheppard was divorced at the time of his death.

81. The Fund has no written record of Mr. Sheppard ever having designated Ms. Sheppard as the designated beneficiary of his annuity or pension accounts held by the Fund.

82. The First Quarter Statement for the period January 1, 2022 – March 31, 2022, reflects that the Fund paid $41,202.13 which was a "Transfer from Participant." A true and accurate copy of this Account Statement is attached hereto as Exhibit 7.

83. Mr. Sheppard did not make a transfer during the period January 1, 2022 – March 31, 2022, as he had passed away in November 2021.

84. The First Quarter Statement reflects Wendy T. Sheppard as the 100% beneficiary.

85. During this time, Ms. Sheppard was not appointed as the Special Personal Representative ("SPR") or Personal Representative ("PR") of Mr. Sheppard's estate.

86. The Fund failed to conduct any due diligence or ask any questions regarding Ms. Sheppard's authority to access or liquidate Mr. Sheppard's annuity, pension or any other accounts held in trust by the Fund.

87. Ms. Sheppard had no actual or apparent authority to act or claim to act in order to take any action that would have changed Mr. Sheppard's beneficiary designation to herself.

88. Ms. Sheppard had no actual or apparent authority to act and claim any annuity or pension fund proceeds belonging to Mr. Sheppard, his beneficiary, or his Estate.

89. At all times relevant, including but not limited to the Fourth Quarter of 2021, the Fund knew or should have known that Ms. Haslam was the designated beneficiary of Mr. Sheppard's annuity and pension accounts held in trust by the Fund.

90. In the First Quarter of 2022, the Fund knew or should have known that Ms. Haslam was the designated beneficiary of Mr. Sheppard's life insurance, annuity and pension held in trust and administered by the Fund.

91. On January 22, 2022, Ms. Sheppard completed a Beneficiary Statement for Symetra Life Insurance Company.  A true and accurate copy of the Beneficiary Statement is attached hereto as Exhibit 8.

92. On February 3, 2022, Gregory A. Geiman, Esquire completed the "Policyholder's Group Life and Accidental Death Statement" for Symetra Life Insurance Company.  A true and accurate copy of the Statement is attached hereto as Exhibit 9.

93. In Section C entitled "Information About The Beneficiary(ies)," Attorney Geiman noted Ms. Sheppard as the beneficiary and noted she was a "former spouse."

94. The Information About the Beneficiar(ies) was specifically for life insurance purposes only.

95. The designation of beneficiary as Ms. Sheppard on the Policyholder's Group Life and Accidental Death Statement for Symetra applied only to life insurance.

96. Elsewhere on the same Statement, Mr. Sheppard was noted to be divorced, a fact which the Fund knew at the time.

97. Despite being the administrator of the Fund and not an employee of Symetra, Attorney Geiman recommended payment of the life insurance claim to Ms. Sheppard over the known claim of Ms. Haslam.

98. Symetra acted upon the advice of a non-employee agent who was an employee of or contracted to the Fund for the purposes of administering the Fund, including managing, directing, controlling, and providing legal advice as the administrator of the Fund's retirement benefits, including the Symetra Life Insurance Policy, annuity, and pension funds.

99. On January 22, 2022, Ms. Sheppard completed a memorandum to the Plan Administrator of the "Annuity & Savings Plan" with the reference line "Distribution of Funds – Qualified Non-Spouse Beneficiary." A true and accurate copy of this form is attached hereto as Exhibit 10.

100. At the time Ms. Sheppard completed and submitted the memorandum to the Fund, Ms. Sheppard was not a Qualified Non-Spouse Beneficiary as that term is defined the plan documents and governing documents regarding the management of the funds held in trust by the Fund.

101. At the time Ms. Sheppard completed the memorandum, she was not a beneficiary of Mr. Sheppard's life insurance, annuity or pension, or any other funds or account held in trust by the Fund.

102. At the time Ms. Sheppard completed the memorandum, she had waived all of her right, title, and interest to the proceeds of Mr. Sheppard's life insurance, annuity, pension, or any other funds held in trust by the Fund.

103. At the time Ms. Sheppard completed the memorandum, Ms. Sheppard was aware that a Court order was in place that specifically barred her from receiving or having an interest in the proceeds of Mr. Sheppard's life insurance, annuity, pension, or any other funds held in trust by the Fund.

104. On January 22, 2022, Ms. Sheppard signed a "Designation of Beneficiary Form – Non-Spouse Beneficiary" under the pains and penalties of perjury   A true and accurate copy of this form is attached hereto as Exhibit 11.

105. On or about the same date, Ms. Sheppard also completed the form entitled "Election of Income Tax Withholdings - Lump Sum Payment Under Section 5.08 or 5.09" despite the fact that Ms. Sheppard had no authority to complete and submit any such form.   A true and accurate copy of said Election is attached as Exhibit 12.

106. On or about February 10, 2022, upon information and belief, Ashley Moreno, an employee of Local 4 completed a form entitled "Deceased Participant Transfer of Account."  A true and accurate copy of this form is attached hereto as Exhibit 13.

107. On February 10, 2022, the Administrator of the Fund, Gregory Geiman, Esquire signed the Deceased Participant Transfer of Account which approved the transfer of Mr. Sheppard's pension proceeds to Ms. Sheppard.

108. On February 10, 2022, Ms. Moreno wrote to Ms. Sheppard and advised her that the Fund was paying her $50,000 as the "Surviving Lump Sum Death Benefit" under the "Pre-Retirement Survivor" provision of the Plan, less applicable federal and state income tax.

True and accurate copies of this correspondence and the check are attached hereto collectively as Exhibit 14.

109. On February 10, 2022, the Fund paid Ms. Sheppard a net of $37,500 after paying $10,000 in federal income tax and $2,500 state income tax on her behalf.

110. Ms. Sheppard was not authorized to complete, sign, or submit the "Designation of Beneficiary Form – Non-Spouse Beneficiary."

111. Prior to February 10, 2022, Mr. Sheppard did not designate Ms. Sheppard as a beneficiary of the proceeds of his annuity, pension, or any of the Pre-Retirement Survivor Lump Sum benefits.

112. The Fund offered life insurance, annuities, and pension benefits (hereinafter "Retirement Benefits") among others to members of Local 4, including Mr. Sheppard.

## STATEMENT OF CLAIMS

### COUNT I

### DECLARATORY RELIEF
**28 U.S.C. §2201**

### (AS TO ALL DEFENDANTS)

113. The Plaintiff repeats, realleges and re-avers the enumerated paragraphs above as if fully stated herein.

114. An actual case or controversy exists as to the rights, obligations, and duties of the Parties with respect to the Plan, to wit, the "Fund" that directs, controls, and administers Retirement Benefits including but not limited to life insurance, annuity, and pension benefits (hereinafter "Retirement Benefits.")

115. At all times relevant, the Plaintiff was the intended beneficiary of the Retirement Benefits of the late Christopher Sheppard.

116. The Fund failed to comply with the terms and conditions of the retirement plan it offered to Mr. Sheppard by disbursing the proceeds of Mr. Sheppard's Retirement Benefits over the claim of Mr. Sheppard's personal representative, the Plaintiff, Ms. Haslam.

117. At all times relevant, Ms. Haslam was also the Personal Representative of Mr. Sheppard's estate and had an obligation to marshal Mr. Sheppard's assets that he owned at the time of death which included claims for Mr. Sheppard's Retirement Benefits.

118. Absent the designation of a duly qualified beneficiary, Mr. Sheppard's Retirement Benefits were due and payable to his Estate.

119. At all times relevant, Ms. Sheppard was not a duly qualified beneficiary of the subject Retirement Benefits

120. The Fund paid Mr. Sheppard's life insurance proceeds to his ex-spouse, Ms. Sheppard, who had no right, title, or interest in said proceeds as the Court order to which she claimed such proceeds had been vacated.

121. At the time said order was vacated, Ms. Sheppard agreed to a Stipulated Judgment on Contempt that she signed whereby she gave up her right, title, and interest in any of the proceeds of any Retirement Benefits held in trust or otherwise administered by the Fund.

122. The Fund paid the proceeds of Mr. Sheppard's Retirement Benefits to his ex-spouse, Ms. Sheppard, who had no right, title, and interest in the said Retirement Benefits because Mr. Sheppard did not designate her as a beneficiary of said accounts.

123. In correspondence dated November 19, 2021, the Fund acknowledged Ms. Haslam's claims to the proceeds of Mr. Sheppard's Retirement Benefits at issue.

124. On or about the same date, the Fund issued Ms. Haslam forms to submit in order to claim said Retirement Benefits.

125.  The Fund knew or should have known that Ms. Haslam was Mr. Sheppard's personal representative whereas she also submitted Mr. Sheppard's death certificate at the request of the Fund.

126.  At all times relevant, Ms. Sheppard had no actual or apparent authority to communicate or otherwise direct the Fund to take any action with respect to Mr. Sheppard's Retirement Benefits

127.  At all times relevant, Ms. Sheppard had no actual or apparent authority to request, possess or even submit Mr. Sheppard's death certificate, which was required for disbursement of Mr. Sheppard's Retirement Benefits

128.  Despite this lack of authority, the Fund disbursed the proceeds of the Mr. Sheppard's Retirement Benefits to  Ms. Sheppard.

129.  Notwithstanding Ms. Haslam's correspondence and completion of forms that put the Fund on notice of a competing claim, the Fund disbursed or directed Symetra to disburse life insurance proceeds in the gross amount of $70,000, Pension and Annuity proceeds in the amount of $42,617.27, and Pension Death Benefits in the amount of $50,000 to Ms. Sheppard when she was not entitled to those funds because she had voluntarily disclaimed them in a Stipulated Judgment on Contempt.

130.  On February 10, 2022, the Fund issued check number 30766 in the net amount of $37,500 after withholding federal and state income tax as elected by Ms. Sheppard.

WHEREFORE, as to Count I of the Complaint seeking declaratory relief and judgment as to all Defendants:

1) That the Court declare as a matter of law that Wendy T. Sheppard has and had no right, title, or interest in submitting a claim for or receiving the proceeds of Mr. Sheppard's life insurance policy with Symetra as administered by the Fund;

2) That the Court declare as a matter of law that Wendy T. Sheppard has and had no right, title, or interest in submitting a claim for or receiving the proceeds of Mr. Sheppard's Annuity and Pension administered by the Fund;

3) That the Court declare as a matter of law that at all times relevant, the Plaintiff, Debra Haslam, in her individual and representative capacities, possessed at all times relevant, a valid claim to the subject Retirement Benefits;

4) That the Court declare as a matter of law that Debra Haslam is the beneficiary of Mr. Sheppard's Retirement Benefits that were administered and held in trust by the Fund;

5) That the Court declare as a matter of law that Ms. Sheppard's claim upon Mr. Sheppard's Retirement Benefits is not compliant with and is in violation of the July 20, 2020, court order because she actually received Mr. Sheppard's Retirement Benefits;

6) That the Court enter a declaratory judgment declaring the validity of Ms. Haslam's claims to the Retirement Benefits in both her individual, beneficiary, and third-party beneficiary capacities as well as in her capacity as Personal Representative of the Estate of Christopher Sheppard.

## COUNT II

**EMPLOYEE RETIREMENT INCOME SECURITY ACT**
**29 U.S.C. §1001 et seq.**

**(VS TRUSTEE DEFENDANTS, GREGORY GEIMAN AND SYMETRA)**

131.   The Plaintiff repeats, realleges and re-avers the enumerated paragraphs above as if fully stated herein.

132.   At all material times, the Fund directed, offered, and administered annuities, pension funds and administered life insurance policies (collectively "Retirement Benefits").   It administered life insurance by and through Symetra as part of the benefits offered to Mr. Sheppard.

133.   As such, the Fund and the Retirement Benefits offered, accepted, and administered by it were at all times a qualified plan under ERISA.

134.   On or about December 9, 2021, Amy Moreno, an employee of the Fund, told Ms. Haslam her name was "on everything" and that she was "the designated beneficiary" and "recipient entitled to receive Mr. Sheppard's benefits," Retirement Benefits administered and held in trust by the Fund.

135.   Notwithstanding Ms. Moreno's statements to Ms. Haslam, on or about January 22, 2022, and continuing until at least February 10, 2022, the Fund caused the proceeds of Mr. Sheppard's Retirement Benefits to be disbursed to Ms. Sheppard to which she was not lawfully entitled.

136.   At the time the Fund caused said Retirement Benefits to be disbursed to Ms. Sheppard, the Fund knew that Ms. Haslam was the personal representative of Mr. Sheppard's estate, and that Ms. Haslam previously claimed the same Retirement Benefits of held and administered by the Fund.

137. At the time the Fund disbursed the proceeds of Mr. Sheppard's Retirement Benefits, the Fund previously corresponded with Ms. Haslam on November 19, 2021, and issued a "request for papers necessary to complete your claim."

138. The Fund requested Ms. Haslam complete and submit a "Statement of Sole Surviving Heir," a "Symetra Beneficiary Statement," and to submit Mr. Sheppard's death certificate in order for the Fund to process the claims for Mr. Sheppard's Retirement Benefits administered and held in trust by the Fund.

139. Ms. Haslam completed both of the forms set forth in paragraph 128 and submitted them to the Fund's office.

140. The Fund received the completed forms set forth in paragraph 128.

141. When it received the completed forms, the Fund knew that Ms. Haslam was the party to whom the Retirement Benefits should have been disbursed.

142. When it received the completed forms, the Fund knew that Ms. Haslam was the party to whom the Retirement Benefits should have been disbursed because she was both the Personal Representative of Mr. Sheppard's estate and also a beneficiary.

143. When the Fund disbursed the pension and annuity benefits to Ms. Sheppard, the Fund knew and was otherwise aware that the entitlement to the Retirement Benefits were disputed.

144. Despite this knowledge, the Fund failed to undertake any action to confirm Ms. Sheppard's claim over the right, title and interest of Mr. Sheppard's personal representative, Ms. Haslam.

145. Despite this knowledge, the Fund failed to undertake any action to confirm Ms. Sheppard's claim over the right, title and interest of Ms. Haslam who was the intended beneficiary of Mr. Sheppard's Retirement Benefits.

146. The Fund's direction to disburse the Retirement Benefits was in error and in violation of the benefit plan which is a violation of ERISA.

147. The Fund's failure to maintain and hold the Retirement Benefits of Mr. Sheppard's intended beneficiary is a violation of the benefit plan which is a violation of ERISA.

148. The Fund's failure to maintain and hold the Retirement Benefits for the benefit of Mr. Sheppard's estate, by and through the Personal Representative, Ms. Haslam, is a violation of the benefit plan which is a violation of ERISA.

149. As a result of the Fund's violation of ERISA, Mr. Sheppard suffered actual damages which are now being asserted by Ms. Haslam in her capacity as Personal Representative of Mr. Sheppard's estate.

150. As a result of the Fund's violation of ERISA, Mr. Sheppard suffered actual damages which are now being asserted by Ms. Haslam in her individual capacity as beneficiary.

Wherefore, as to Count II of the Complaint seeking relief for violations of ERISA by the Trustees, Mr. Geiman and Symetra, the Plaintiff prays for the following relief:

1)  That the Court enter judgment against the Trustees, Mr. Geiman and Symetra, jointly and severally, pursuant to ERISA and that the Court award damages, costs, interest, and reasonable attorney's fees;

2)  That the Court find the Trustees, Mr. Geiman and Symetra violated ERISA by paying the claim upon the subject Retirement Benefits to Wendy T. Sheppard over the competing and earlier claim of Mr. Sheppard's Personal Representative;

3)  That the Court find the Trustees, Mr. Geiman and Symetra violated ERISA by failing to pay Ms. Haslam's lawful claims upon the Retirement Benefits, as she was the intended beneficiary;

4)   That by failing to disburse proceeds to the party lawfully entitled to receive them, the Trustees, Mr. Geiman and Symetra breached their fiduciary duty pursuant to ERISA;

5)   That the Court award actual, consequential, and punitive damages; and

6)   That the Court award any other relief that the Court deems just and proper;

<u>**COUNT III**</u>

**BREACH OF FIDUCIARY DUTY**

**(ERISA AND COMMON LAW)**

**(VS. TRUSTEE DEFENDANTS, GREGORY GEIMAN AND SYMETRA)**

151.  The Plaintiff repeats, realleges and re-avers the enumerated paragraphs above as if fully stated herein.

152.  At all times relevant, the Trustees functioned as fiduciaries and were responsible for the management and operation of the Fund which held the Retirement Benefits in Trust.

153.  At all times relevant, the Defendant, Gregory Geiman, was the administrator of the Fund, formed opinions and made recommendations to the Fund on which claims should be paid.

154.  At all times relevant, the Defendant, Gregory Geiman, was the administrator of the Fund, formed opinions and made recommendations to the Fund on which claims should be denied.

155.  At all times relevant, the Defendant, Gregory Geiman, was the administrator of the Fund, formed opinions and made recommendations to the Fund on claims for Retirement Benefits and had a duty to communicate the basis of the decision with respect to each claim presented to the Fund.

156.  Gregory Geiman was responsible for making the decision to deny Ms. Haslam's claims to Mr. Sheppard's Retirement Benefits.

157. As such, at all times relevant, Mr. Geiman owed a fiduciary duty to those beneficiaries of the Fund.

158. At all times relevant, the Fund knew or should have known that Ms. Sheppard was designated as a beneficiary because it was court ordered that she be so designated.

159. The Fund's own form noted that the designation was court-ordered.

160. The Fund's own records and files indicate that the beneficiary designation was court ordered.

161. At all times relevant, the Fund had a fiduciary duty to undertake due diligence before issuing payments of Retirement Benefits held in trust for the benefit of Mr. Sheppard, his estate and intended beneficiar(ies).

162. In derogation of that duty, the Fund failed to undertake such due diligence or to request or otherwise gather information regarding the court-ordered designation of the beneficiary.

163. Despite competing claims to the same Retirement Benefits administered by the Fund, the Fund failed to undertake due diligence including but not limited to requesting, reviewing, asking any questions, or making any inquiries relative to Ms. Sheppard being a "court ordered" beneficiary or dependent.

164. Had the Fund undertaken due diligence, it would have learned that Ms. Sheppard was neither the designated nor intended beneficiary.

165. Had the Fund undertaken due diligence or requested additional information, it would have learned that Ms. Sheppard's claim for Mr. Sheppard's Retirement Benefits was false and misleading.

166. Had the Fund not ignored Ms. Haslam's claim for Mr. Sheppard's benefits, it would have learned that Ms. Sheppard's claim for Mr. Sheppard's Retirement Benefits was false and misleading.

167.  Despite its representations and writings to Ms. Haslam and acknowledging her claim to the proceeds of Mr. Sheppard's Retirement Benefits, the Fund accepted and processed the claim of an ex-spouse seeking the Retirement Benefits of her deceased ex-spouse.

168.  Despite its representations and writings to Ms. Haslam and acknowledging her claim to the proceeds of Mr. Sheppard's Retirement Benefits, the Fund accepted and processed Ms. Sheppard's claim for Mr. Sheppard's Retirement Benefits and paid them without questioning the competing claims for the same Retirement Benefits and without conducting any due diligence required of a fiduciary.

169.  At all times material to the errors, acts and omissions set forth in the Complaint, the Trustees, Mr. Geiman and Symetra owed a fiduciary duty to Mr. Sheppard, his Estate and his beneficiary imposed upon them by virtue of ERISA, 29 U.S.C. §1113.

170.  In addition to the foregoing fiduciary duty, the Trustees, Mr. Geiman and Symetra also had a common law fiduciary duty to Mr. Sheppard, his Estate and beneficiary to direct and control the administration of Mr. Sheppard's Retirement Benefits in a manner consistent with the terms and conditions of the Fund and it governing documents.

171.  The Trustees, Mr. Geiman and Symetra were obligated to hold, preserve, and protect Mr. Sheppard's Retirement Benefits and to hold them in trust and to see to it that any proceeds were disbursed to Mr. Sheppard, his Estate and beneficiaries who were entitled to receive them.

172.  In  violation of said fiduciary duties, the Trustees caused or directed the Fund's employees to disburse Mr. Sheppard's Retirement Benefits to Ms. Sheppard when it knew or should have known that Ms. Sheppard submitted a bogus claim for her deceased, ex-spouse's Retirement Benefits.

173. In further breach and derogation of the Trustees' fiduciary duties, Ms. Sheppard's claim to her deceased ex-spouse's Retirement Benefits did not raise an eyebrow with the Fund's employees who paid the claim.

As to Count III of the Complaint seeking relief and damages for breach of fiduciary duty by the Trustees, Mr. Geiman and Symetra:

1) That the Court enter judgment against the Trustees and Symetra, jointly and severally, and that the Court award damages, costs, interest, and reasonable attorney's fees;

2) That the Court find the Trustees and Symetra breached their respective fiduciary duties both under ERISA and the common law owed to Mr. Sheppard, his Estate, the Estate beneficiary, and third-party beneficiary, Ms. Haslam;

3) That the Court award actual, consequential, and punitive damages; and

4) That the Court award any other relief that the Court deems just and proper;

## COUNT IV

### BREACH OF TRUST

### (VS. TRUSTEES AND GREGORY GEIMAN – G.L. c. 203E §1001 et seq.)

174. The Plaintiff repeats, realleges and re-avers the enumerated paragraphs above as if fully stated herein.

175. By making disbursements from Mr. Sheppard's accounts that were not authorized and not properly distributed, the Trustees and Mr. Geiman, as administrator of the Fund, violated duties not only to Mr. Sheppard and his estate but those owed to the beneficiaries of Mr. Sheppard's Retirement Benefits.

176. A Trustee's violation of a duty owed to the settlor and beneficiaries is a breach of trust.

177. At all times relevant, as the administrator of the Fund, Mr. Geiman committed a breach of trust by recommending that the proceeds of the Retirement Benefits be disbursed to Ms. Sheppard.

178. As the Trustees and Mr. Geiman violated several duties owed to Mr. Sheppard and/or his beneficiaries, the Trustees are liable for breach of trust.

As to Count IV of the Complaint seeking relief and damages for breach of trust as to the Trustees and Gregory Geiman, the Plaintiff prays for the following relief:

1) That the Court enter judgment against the Trustees, jointly and severally, and that the Court award damages, costs, interest, and reasonable attorney's fees;

2) That the Court enjoin the Trustees from committing further breaches of trust;

3) That the Court compel the Trustees to redress the breach of trust by paying money, restoring property or other means;

4) That the Court order the Trustees to account;

5) That the Court appoint a special fiduciary to take possession of the trust property and administer the trust;

6) That the Court void the acts of the Trustees, impose a lien or a constructive trust on trust property or trace trust property wrongfully disposed of and recover the property or its proceeds; or

7) That the Court award any other relief that the Court deems just and proper.

## COUNT V

### BREACH OF CONTRACT

### (VS. ALL DEFENDANTS)

179. The Plaintiff repeats, realleges and re-avers the enumerated paragraphs above as if fully stated herein.

180. At all times relevant, the Trustees, by and through the employees and agents of the Fund offered various Retirement Benefits.

181. At all times relevant, Gregory Geiman was responsible for the administration of the Retirement Benefits at issue.

182. At all times relevant, Symetra had a contract with Mr. Sheppard that insured his life.

183. At all times relevant, the Trustees, the Fund and Symetra had a contractual obligation to comply with the terms, conditions, provisions, rules and governing documents of the Fund, the individual plans or policies and contracts that provided Mr. Sheppard's Retirement Benefits.

184. At all times relevant, the Trustees and the Fund designated Mr. Geiman as their designee to see to it that the Trustees and Fund complied with the terms, conditions, provisions, rules and governing documents of the Fund, the individual plans or policies and contracts that provided Mr. Sheppard's Retirement Benefits.

185. When he became a member of Local 4, in reliance upon the promises and representations made by the Fund and its employees, Mr. Sheppard accepted the offer of various Retirement Benefits.

186. At the same time, and at all times relevant to the instant dispute, Mr. Sheppard paid, made, and gave good and valuable consideration for the Retirement Benefits both held in trust and administered by the Fund.

187. At all times relevant, the Trustees on behalf of the Fund had a contract with Mr. Sheppard to offer, provide, manage, and administer Retirement Benefits.

188. At all times relevant, Symetra had a contract with Mr. Sheppard to provide, manage and administer Retirement Benefits, including but not limited to life insurance.

189. At all times relevant, Symetra had the Fund administer its life insurance contract with Mr. Sheppard.

190. At all times relevant and in her individual capacity, Ms. Haslam was a third-party beneficiary of Mr. Sheppard's Retirement Benefits.

191. In breach of its contract with Mr. Sheppard, the Fund, by and through the Trustees and Mr. Geiman, as the Fund's administrator, failed to provide, manage, and administer the Retirement Benefits in accordance with the terms and conditions of complied with the terms, conditions, provisions, rules and governing documents of the Fund, the individual plans or policies and contracts.

192. In breach of its contract with Mr. Sheppard, Symetra failed to provide, manage, and administer its life insurance policy in accordance with the terms and conditions of said contract.

193. The Trustees, the Fund, Mr. Geiman and Symetra's breaches of contracts and other agreements, caused Mr. Sheppard, his Estate, and his beneficiary to suffer damages, including but not limited to the actual cash value of the Retirement Benefits at the time said benefits should have been disbursed to Mr. Sheppard's estate, loss of use, interest, costs, and reasonable attorney's fees.

194. On July 20, 2020, Ms. Sheppard executed a contract with Mr. Sheppard in the form of a Stipulation for Judgment on Contempt.

195. The Stipulation was a valid and stipulated agreement supported by Mr. Sheppard's forbearance on collecting alimony payments from Ms. Sheppard to which she was not lawfully entitled, and which Mr. Sheppard had overpaid due to Ms. Sheppard's deceit.

196. In the Stipulation, Ms. Sheppard agreed to give up, release and discharge any right, title, or interest in Mr. Sheppard's retirement benefits.

197. In breach of said Stipulation, Ms. Sheppard actively sough and actually obtained Mr. Sheppard's Retirement Benefits.

198. Ms. Sheppard's breach of the Stipulation she signed that was entered as an order of the Probate and Family Court caused Mr. Sheppard, his estate, and his beneficiaries actual damages.

199. By her breach of the Stipulation, Ms. Sheppard deprived Mr. Sheppard by and through his estate of the benefit of his bargain and deprived him of the benefit of the consideration paid and actual damages.

200. Said deprivation of consideration is the amount of Mr. Sheppard's actual damages for alimony payments overpaid to Ms. Sheppard as a result of her deceit.

As to Count V of the Complaint seeking relief and damages for breach of contract as to all the Defendants, the Plaintiff prays for the following relief:

1) That the Court enter judgment against all the Defendants, jointly and severally, and award damages together with costs, interest, and reasonable attorney's fees;

2) That the Court enter judgment against the Trustees and Mr. Geiman, jointly and severally, on behalf of the Fund for breach of contract with respect to the administration of the subject Retirement Benefits and to award damages, costs, interest, and reasonable attorney's fees;

3)   That the Court enter judgment against Symetra, for breach of contract with respect to its breach of the life insurance contract and that the Court award damages, costs, interest, and reasonable attorney's fees;

4)   That the Court enter judgment against Ms. Sheppard for breach of contract with respect to her violation of the Stipulation and agreement dated July 20, 2020, and that the Court award Mr. Sheppard's estate damages, including but not limited to the Retirement Benefits paid to her to which Ms. Sheppard was not lawfully entitled, any and all overpayments for alimony to Ms. Sheppard that was subject of the Stipulation, together with costs, interest and reasonable attorney's fees;

5)   Alternatively, that the Court order specific performance of the life insurance contract; and

6)   Alternatively, that the Court order specific performance of the disbursement of the annuity and pension proceeds required by the contract, rules, and regulations of the Fund.

## COUNT VI

### NEGLIGENCE

### (VS. TRUSTEE DEFENDANTS, GREGORY GEIMAN AND SYMETRA)

201.  The Plaintiff repeats, realleges and re-avers the enumerated paragraphs above as if fully stated herein.

202.  At all times relevant the Fund offered and members of Local 4 accepted life insurance benefits through Symetra.

203.  The Trustee Defendants chose and administered the Symetra policy, including those policies owned by Mr. Sheppard at the time of his death.

204. The Trustee Defendants chose and administered the Fund's pension plan, including Mr. Sheppard's plan to which he and his employer contributed during the last few years of his life.

205. At all times relevant, the Trustee Defendants oversaw and were responsible for managing the Fund of which Mr. Geiman was the administrator.

206. At all times relevant, Mr. Geiman reported to the Trustee Defendants.

207. At all times relevant, the Trustee Defendants, Mr. Geiman and Symetra owed duties of reasonable care to Mr. Sheppard, his estate and the beneficiaries in the handling, administration, and disposition of his Retirement Benefits.

208. In breach of said duties, the Trustee Defendants, Mr. Geiman and Symetra erroneously paid the subject Retirement Benefits to Ms. Sheppard when the Trustee Defendants, Mr. Geiman and Symetra knew or should have known that Ms. Sheppard had no right, title, or interest in those Retirement Benefits.

209. In breach of said duties, the Trustee Defendants, Mr. Geiman and Symetra erroneously paid the proceeds of Mr. Sheppard's Retirement Benefits to Ms. Sheppard when the Trustees knew or should have known that Ms. Sheppard had no right, title, or interest in those proceeds.

210. In further breach of said duties, the Trustee Defendants, Mr. Geiman and Symetra erroneously paid the proceeds of Mr. Sheppard's Retirement Benefits when each knew or should have known that there was a competing claim for the disbursement of Mr. Sheppard's Retirement Benefits from the Fund made by the Personal Representative of his estate, Ms. Haslam.

211. As a result of their breaches of the standard of care, the Trustees, Mr. Geiman and Symetra directly and proximately caused Mr. Sheppard's estate and his beneficiary to suffer damages.

WHEREFORE, as to Count VI of the Complaint seeking relief and damages for negligence as to the Trustees, Mr. Geiman and Symetra, the Plaintiff prays for the following relief:

1) That the Court enter judgment against the Trustees and Symetra, jointly and severally, and award damages and reasonable attorney's fees;

2) That the Court find the Trustees and Symetra breached their respective duties of care both under ERISA and the common law owed to Mr. Sheppard, his Estate, the Estate beneficiary, and third-party beneficiary, Ms. Haslam;

3) That the Court award actual, consequential, and punitive damages; and

4) That the Court award any other relief that the Court deems just and proper.

## COUNT VII

### UNJUST ENRICHMENT

### (VS. WENDY T. SHEPPARD)

212. The Plaintiff repeats, realleges and re-avers the enumerated paragraphs above as if fully stated herein.

213. By naming Ms. Sheppard as a beneficiary on his Retirement Benefits prior to July 20, 2020, Mr. Sheppard conferred benefits upon Ms. Sheppard.

214. In accordance with an order of the Plymouth Probate and Family Court dated July 20, 2020, Ms. Sheppard was adjudicated in contempt of Court.

215. In order to purge herself of said contempt, Ms. Sheppard surrendered all of her right, title, and interest in any of Mr. Sheppard's Retirement Benefits held in trust and administered by the Fund.

216. Despite this order and her surrendering all of her right, title and interest in Mr. Sheppard's Retirement Benefits, Ms. Sheppard unlawfully and without right or authority made a claim to the Fund to receive Mr. Sheppard's Retirement Benefits when she knew she was not entitled to them.

217. Ms. Sheppard's retention of said benefits under these circumstances would amount to an inequitable and unjust windfall to her to which she is not entitled to the detriment of Mr. Sheppard's estate and the beneficiaries.

WHEREFORE, as to Count VII of the Complaint seeking relief for unjust enrichment as to the Defendant, Wendy T. Sheppard, the Plaintiff requests the following relief:

1) That the Court enter judgment against Wendy T. Sheppard, jointly and severally and award the appropriate equitable relief;

5) That the Court order Wendy T. Sheppard to account for all Retirement Benefits received from the Fund that were held in Mr. Sheppard's accounts;

6) That the Court order and impose a constructive trust upon any and all Retirement Benefits, received from the Fund that were held in Mr. Sheppard's accounts and to immediately transfer the property to Ms. Haslam;

7) That the Court order any and all ill-gotten gains, interest, goods, proceeds, funds, monies, distributions, and the like be disgorged;

8) That the Court order the Defendant, Wendy T. Sheppard, to pay restitution to the Plaintiff and to any other party aggrieved by her actions or conduct to the extent said litigants were injured as a result of the acts and conduct of the Defendant as found by this Court; and

9) That the Court award any other relief that the Court deems just and proper.

## COUNT VIII

### CONVERSION

### (AS TO ALL DEFENDANTS)

218. The Plaintiff repeats, realleges and re-avers the enumerated paragraphs above as if fully stated herein.

219. By submitting claims for and actually receiving Mr. Sheppard's retirement benefits, including his life insurance proceeds and his pension funds, Ms. Sheppard intentionally and wrongfully exercised acts of ownership, control, and dominion over personal property to which she had no right of possession.

220. At the time she submitted claims and at the time she actually received the subject funds, Ms. Sheppard knew that she was not lawfully entitled to receive them and that she had in fact disclaimed and surrendered all of her right, title and interest in said retirement funds in order to purge herself of contempt for having failed to report accurate and material information in the calculation of alimony Mr. Sheppard was previously ordered to pay as part of their divorce.

221. When the Fund's employees made pension disbursements to Ms. Sheppard, the Fund, by and through its Trustees, intentionally and wrongfully exercised acts of ownership, control, and dominion over personal property which the Fund had no right to own, control or have dominion over for the purposes of making distributions to Ms. Sheppard who was not entitled to receive said distributions.

222. When Symetra disbursed the proceeds of Mr. Sheppard's life insurance policy to Ms. Sheppard, it intentionally and wrongfully exercised acts of ownership, control, and dominion over personal property which Symetra had no right to own, control or have dominion over

for the purposes of making distributions to Ms. Sheppard who was not entitled to receive said distributions.

223. By intentionally and wrongfully exercising acts of ownership, control, and dominion over Mr. Sheppard's retirement benefits, to wit, his Annuity and Pension, and his life insurance proceeds, the Defendants caused Mr. Sheppard's Estate and beneficiary to incur and sustain substantial damages including but not limited to the actual cash value of the disbursements that were erroneously and unlawfully made, damages for loss of use, interest, costs, and reasonable attorney's fees.

WHEREFORE, As to Count VIII of the Complaint seeking relief for conversion as to the Fund and the Defendant, Wendy T. Sheppard, the Plaintiff prays for the following relief:

1)   That the Court enter judgment against the Fund and Wendy T. Sheppard, jointly and severally and award the appropriate relief, damages, costs, expenses, and reasonable attorney's fees;

2)   That the Court order the Fund and Ms. Sheppard to account for all retirement benefits, life insurance and pension benefits received from the Fund that were held in Mr. Sheppard's accounts;

3)   That the Court award incidental, consequential and punitive damages compensating Ms. Haslam for the wrongful conversion of funds intended for her benefit;

4)   That the Court award any other relief that the Court deems just and proper.

## COUNT IX

### SUIT ON A JUDGMENT

### (VS. WENDY T. SHEPPARD)

224. The Plaintiff repeats, realleges and re-avers the enumerated paragraphs above as if fully stated herein.

225. On July 20, 2020, when Ms. Sheppard entered into a "Stipulation for Judgment" it was ordered and adjudged in contemplation of an open complaint for contempt and complaint for modification that Ms. Sheppard was in contempt of the judgment by way of receiving an overpayment of alimony.

226. In purging herself of the contempt, the Divorce Judgment dated June 1, 2015 "Addendum D" of the Separation Agreement was vacated in its entirety and the parties agreed that each shall retain their own retirement, pension, investment and like accounts and the language of said "Addendum D" shall be replaced with a new "Addendum D" containing the following and legally operative language: "The Husband and Wife will each retain his or her sole and exclusive property all their right, title and interest in any pension, retirement plans and savings." See Exhibit 4 at ¶2.

227. Paragraph 3 of the same Stipulation for Judgment states, "Specifically, the Plaintiff shall retain sole right, title and interest in his Teamster Defined Benefit Pension Plan and Local 25 New England Teamsters Savings and Investment Plan and another [sic] retirements he may have acquired." See Exhibit 4 at ¶3.

228. Ms. Sheppard was to retain "sole, right, title and interest in the Southcoast Health IRA and the Transamerica IRA and any other retirement assets she may have acquired." See Exhibit 4 at ¶4.

229. The parties further agreed that they each were relieved and no longer required to file a QDRO in the divorce matter as the issue was moot. See Exhibit 4 at ¶ 5.

230. The parties agreed to terminate alimony as part of the Stipulation for Judgment. See Exhibit 4 at ¶6.

231. At the time Ms. Sheppard executed the Stipulation for Judgment, any right, title, and interest she may have had in any of Mr. Sheppard's Retirement Benefits was extinguished.

232. At the time Ms. Sheppard executed the Stipulation for Judgment, Mr. Sheppard's obligation to provide life insurance for the benefit of Ms. Sheppard was extinguished.

233. At the time Ms. Sheppard executed the Stipulation for Judgment, Mr. Sheppard's obligation to provide her with any additional money, assets, consideration, or anything else was extinguished.

234. The July 20, 2020, Stipulation for Judgment also stated Ms. Sheppard was to have no contact with Mr. Sheppard but under very limited circumstances which are not here present.

235. The July 20, 2020, order compensated Mr. Sheppard for Ms. Sheppard's false, dishonest, and untruthful information provided to the Plymouth Probate & Family Court resulting in Mr. Sheppard paying Ms. Sheppard more alimony than she was entitled to.

236. The compensation received by Mr. Sheppard was that Ms. Sheppard would no longer have any right, title, or interest in his Retirement Benefits.

237. The compensation and bargained for exchange in the Stipulation was conditioned upon Ms. Sheppard waiving her right, title, and interest in Mr. Sheppard's Retirement Benefits.

238. Ms. Sheppard violated the July 20, 2020, order by claiming Mr. Sheppard's Retirement Benefits.

239. Due to her violation of the July 20, 2020, order, Ms. Sheppard gave nothing up in exchange for the Stipulation on Judgment on Contempt.

240. As such, Mr. Sheppard's estate is entitled to all alimony he overpaid to Ms. Sheppard due to her false and fraudulent misrepresentations of material facts to the Probate & Family Court.

241. Mr. Sheppard's claim for compensation and damages resulting from Ms. Sheppard's violation of said Court order belongs to his Estate.

242. At the time Ms. Sheppard applied for benefits and made a claim for Mr. Sheppard's death benefits and his pension, she knew or should have known that she was not lawfully entitled to such benefits.

243. At the time Ms. Sheppard applied for benefits and made a claim for Mr. Sheppard's life insurance and pension benefits, she knew or should have known that she was not lawfully entitled to such benefits and that she made misrepresentations of material fact to the Fund, its employees, and the subject insurance companies.

244. Ms. Sheppard made claims for benefits to which she was not lawfully entitled, with both knowledge and an intent to deceive the Fund to the detriment of the Estate and beneficiary.

245. Ms. Sheppard made claims for benefits to which she was not lawfully entitled, with both knowledge and an intent to deceive and made both false and fraudulent statements to an insurance company when submitting signed and sworn documents in proof of loss asserting her claim to the receipt of the subject life insurance proceeds.

246. Ms. Sheppard's claims submitted to the Fund constitute insurance and securities fraud.

247. Ms. Sheppard made claims for benefits to which she was not lawfully entitled, with both knowledge and an intent to deceive and made both false and fraudulent statements to a pension fund when submitting signed and sworn documents asserting her claim to the receipt of the subject pension proceeds.

248. As of July 20, 2020, Ms. Sheppard knew or should have known that Mr. Sheppard was not required to list her as a beneficiary as to any of his retirement benefits including any pension or life insurance benefits he owned that were administered by the Fund.

249. Ms. Sheppard knowingly and willfully violated and otherwise failed to comply with the Stipulation for Judgment dated July 20, 2020, causing damages and deprivation of assets to the Estate of Christopher Sheppard and the beneficiaries thereof.

250. By her abject failure to comply with the Stipulation of Judgment, Ms. Sheppard caused Mr. Sheppard, by and through his estate to suffer damages and a deprivation of assets that has caused and will continue to cause ongoing damages due to the impact of this litigation on the value of Mr. Sheppard's estate, costs, loss of use, deprivation of funds, interest, and reasonable attorney's fees.

WHEREFORE, as to Count IX, suit on a judgment, the Plaintiff demands the following relief:

1) That the Court enter judgment against Wendy T. Sheppard as to Count XI as judgment previously entered against her on July 20, 2020;

2) That the judgment entered on or about July 20, 2020, required Ms. Sheppard to waive or disclaim any right, title, or interest in Mr. Sheppard's Retirement Benefits;

3) That Ms. Sheppard breached the order of the Court by seeking and receiving said Retirement Benefits;

4) That by seeking and receiving such Retirement Benefits in derogation of the court order, Ms. Sheppard failed to comply with said order;

5) That the Court award damages equal to any and all amounts overpaid by Mr. Sheppard during his life to Ms. Sheppard for alimony;

6) That the Court award consequential damages as a result of Ms. Sheppard's violation of the court order, including cost, interest, and reasonable attorney's fees; and

7) That the Court order and award all other damages and relief that it deems equitable and just.

## DEMAND FOR TRIAL BY JURY

The Plaintiff hereby requests a jury trial on all issues so triable.

Respectfully Submitted,

DEBRA HASLAM,

Individually and
in all her representative capacities,

By her attorneys,

*Peter S. Farrell*
Peter S. Farrell, BBO No.: 656512
Amber R. Cohen, BBO No.: 672703
Peter G. Thomas, BBO No.: 698402
Date:  August 5, 2022                COHEN CLEARY, P.C.
122 Dean Street
Taunton, MA 02780
T: 508-880-6677; F: 508-880-6679
pfarrell@cohencleary.com
acohen@cohencleary.com
pthomas@cohencleary.com